IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AVT NEW JERSEY, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>CUBITAC CORP., and YOEL WEISS,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR WRIT OF REPLEVIN AND DENYING PLAINTIFF'S MOTION FOR WRIT OF ATTACHMENT**<br><br>Case No. 2:19-cv-00662-JNP<br><br>District Judge Jill N. Parrish |

Before the court is Plaintiff's motion for a prejudgment writ of replevin and a prejudgment writ of attachment. Plaintiff brings this motion under Rule 64 of the Federal Rules of Civil Procedure. The court GRANTS the motion for a writ of replevin and DENIES the motion for a writ of attachment.

**FACTUAL BACKGROUND**

On May 9, 2019, AVT New Jersey, L.P. ("AVT") and Cubitac Corp. ("Cubitac") entered into a lease agreement under which AVT leased to Cubitac equipment consisting of racking, a mezzanine, and lifts. AVT purchased the equipment and provided it to Cubitac. Cubitac was to make 42 monthly payments, each in the amount of $40,825.41.

On that same date, May 9, 2019, AVT gave notice that it had agreed to assign the equipment lease to Prime Alliance Bank ("Prime Alliance"). Yoel Weiss ("Weiss"), President of Cubitac, signed a written notice acknowledging the assignment. Under the terms of the assignment agreement, Prime Alliance took title to the equipment until the final monthly lease payment was

to be made, at which time title would automatically transfer back to AVT. *See* ECF No. 38-5 at 2–3. During the lease term, Prime Alliance designated AVT as its agent in servicing the lease, granting AVT "all of [Prime Alliance]'s obligations as successor lessor under the Lease." *Id.* at 3. These obligations included "tak[ing] such action as [Prime Alliance] shall reasonably direct to enforce all available rights and remedies under the Lease." *Id.*

Cubitac failed to make even a single monthly payment under the lease. In August 2019, AVT sent Cubitac physical and electronic notice of its default. It demanded payment and stated that if Cubitac failed to pay, it would take legal action and steps to repossess the equipment. Cubitac failed to make payment and AVT brought suit in September 2019. AVT thereafter brought this motion for prejudgment writs of replevin and attachment.

## DISCUSSION

Rule 64 of the Federal Rules of Civil Procedure authorizes the court to apply Utah law regarding writs of replevin and attachment. The court therefore looks to Rules 64A, 64B and 64C of the Utah Rules of Civil Procedure for the appropriate standard for entering such writs. Rule 64A provides the general requirements for entering a prejudgment writ, while Rule 64B and Rule 64C provide, respectively, the specific requirements for entering a writ of replevin and a writ of attachment. The requirements of Rules 64A and 64B must be satisfied before this court may enter a prejudgment writ of replevin; the requirements of Rules 64A and 64C must be satisfied before the court may enter a prejudgment writ of attachment. "The burden is on the plaintiff to prove the facts necessary to support the writ." UTAH R. CIV. P. 64A(h).

Under Rule 64A, the plaintiff must satisfy "all of the requirements listed in subsections (c)(1) through (c)(3) and at least one of the requirements listed in subsections (c)(4) through (c)(10)." *Id* at (c). These requirements are as follows:

2

>(1) that the property is not earnings and not exempt from execution; and
>
>(2) that the writ is not sought to hinder, delay or defraud a creditor of the defendant; and
>
>(3) a substantial likelihood that the plaintiff will prevail on the merits of the underlying claim; and
>
>(4) that the defendant is avoiding service of process; or
>
>(5) that the defendant has assigned, disposed of or concealed, or is about to assign, dispose of or conceal, the property with intent to defraud creditors; or
>
>(6) that the defendant has left or is about to leave the state with intent to defraud creditors; or
>
>(7) that the defendant has fraudulently incurred the obligation that is the subject of the action; or
>
>(8) that the property will materially decline in value; or
>
>(9) that the plaintiff has an ownership or special interest in the property; or
>
>(10) probable cause of losing the remedy unless the court issues the writ.

*Id.* In addition to these requirements, to obtain a writ of replevin, a plaintiff must also show

>(1) that the plaintiff is entitled to possession; and
>
>(2) that the defendant wrongfully detains the property.

*Id*. 64B(b). Finally, for a writ of attachment, a plaintiff must show, in addition to the requirements of Rule 64A,

>(1) that the defendant is indebted to the plaintiff;
>
>(2)(i) that the action is upon a contract or is against a defendant who is not a resident of this state or is against a foreign corporation not qualified to do business in this state; or
>
>>(ii) the writ is authorized by statute; and
>
>(3) that payment of the claim has not been secured by a lien upon property in this state.

*Id.* 64C(b).

I. **Writ of Replevin**

"A writ of replevin is available to compel delivery to the plaintiff of specific personal property held by the defendant." UTAH R. CIV. P. 64B(a). AVT argues that a writ of replevin is proper here because AVT has satisfied the first three requirements of Rule 64A(c). In addition, AVT argues that it has also satisfied two of the requirements of 64A(c)(4) through (10): 1) the equipment in question will depreciate in value, *see id.* 64A(c)(8); and 2) as agent of the equipment's owner, it has a special interest in the equipment. *See id.* 64A(c)(9). AVT also argues that the requirements of Rule 64B are met because Cubitac defaulted under the lease agreement by failing to make any monthly payments. Therefore, Cubitac wrongfully detains the property and AVT, as the owner's agent, is entitled to possession. *See id.* 64B(1)–(2).

Cubitac objects to the issuance of the writ. First, it argues that because AVT did not send Cubitac a notice of default prior to bringing this action, its motion should be denied. Second, Cubitac argues that AVT does not satisfy the requirement of Rule 64A(c)(3), a substantial likelihood of success on the underlying action, because 1) AVT failed to send Cubitac a default notice and 2) the court cannot determine whether AVT has standing to bring the underlying claims because AVT failed to provide Cubitac with a copy of its assignment agreement with Prime Alliance or attach the agreement to its motion. Third, Cubitac argues that AVT has failed to satisfy Rule 64A(c)(8) because the equipment is not depreciating in value and that it has further failed to satisfy Rule 64A(c)(9) because, as Prime Alliance's agent, AVT possesses no special interest in the property. Fourth, Cubitac argues that AVT does not satisfy the requirement in Rule 64B(b)(2) that the property be wrongfully detained since AVT did not send it a default notice, a prerequisite

4

for wrongful detention. Finally, Cubitac argues that writs of replevin may only be issued to compel delivery of personal property, and that because the equipment is firmly affixed to the floor and walls of Cubitac's facilities, it is real, not personal, property. The court considers each of these arguments in turn.

    A.    Notice of Default

Cubitac asserts that AVT failed to provide it with written notice that it was in default of the lease agreement. Citing two Utah Supreme Court cases, *Nielsen v. Hyland*, 170 P. 778 (Utah 1918), and *Pugh v. Stratton*, 450 P.2d 463 (Utah 1969), it argues that a notice of default, or a demand of return of the equipment, is a prerequisite to a motion for a writ of replevin. In both cases, the Utah Supreme Court held that a plaintiff must demand return of the property is before a bringing a replevin action. *See Pugh*, 450 P.2d at 466; *Nielsen*, 170 P. at 466.

It is unclear whether these cases govern the matter at hand because both of them involved common law actions for replevin, whereas AVT seeks replevin under Utah's Rules of Civil Procedure, which do not require that a plaintiff demand return of the property before seeking a prejudgment writ. However, even assuming *arguendo* that *Nielsen* and *Pugh* govern this dispute, AVT has met its burden of showing that it gave Cubitac notice of default. Christopher Scharman, general counsel for AVT, testified that AVT sent Cubitac notice of default through email and by overnight courier. *See* ECF No. 38-1 at 2. AVT has produced the emailed copy of the default notice, dated August 19, 2019, which notified Cubitac that AVT might initiate legal proceedings and take other measures to take possession of the equipment. *See* ECF. No. 38-8 at 6–7. In addition, AVT has produced shipping confirmation that a physical copy of the notice was delivered to Cubitac on August 21, 2019. *Id.* at 4. The court finds therefore that AVT has established that it provided notice of default to Cubitac.

5

B.     Likelihood of Success on the Merits (Rule 64A(c)(3))

Cubitac argues that AVT does not have a substantial likelihood of prevailing on the merits of its underlying claims for two reasons: 1) it is unlikely to succeed on its replevin claim because it failed to send Cubitac a notice of default, and 2) the court is unable to determine whether Cubitac has standing, since it failed to provide Cubitac or the court with a copy of its assignment agreement with Prime Alliance.

Both arguments fail. The first argument fails because AVT's underlying claim is not a replevin claim, it is a breach of contract claim, and Cubitac has not offered any defense to AVT's breach of contract claim. AVT accuses Cubitac of failing to make any monthly payments as required by the lease agreement, and Cubitac does not deny this allegation. Plaintiff has thus met its burden of showing a strong likelihood of success on the merits. *See* UTAH R. CIV. P. 64A(c)(3).

The second argument fails because AVT has provided the court with a copy of the assignment agreement,[1] which provides that AVT is Prime Alliance's "agent to perform all of [Prime Alliance]'s obligations as successor under the Lease . . ." ECF No. 38-5 ¶ 4. Prime Alliance pays AVT a fee in consideration of this service. *Id.*  In *TFG-Illinois, L.P. v. United Maintenance Co., Inc.*, this court found that TFG-Illinois ("TFG"), the agent and lease servicer of a lessor, had standing to sue for breach of contract. 829 F.Supp.2d 1097, 1110–12 (D. Utah 2011). Like AVT, TFG performed its services for a fee.  The court reasoned that TFG had standing because it "ha[d] a pecuniary interest in performing its duties." *Id.* at 1112. Accordingly, "any default by [the lessee] threaten[ed] pecuniary loss," and this pecuniary loss "constitute[d] an injury in fact" *Id.* Here, AVT is Prime Alliance's agent and services the lease for a fee. It thus finds itself in the same shoes as

---

[1] Weiss also signed a "Notice of Assignment." See ECF No. 38-6.

TFG. Indeed, AVT's case for standing may be even stronger than TFG's since AVT has a future ownership interest in the equipment—once the payments under the lease are completed, title to the equipment automatically transfers to AVT. *See* ECF No. 38-5 ¶ 3. The court therefore finds that AVT has standing to bring the underlying claims in this action.

   C.  Depreciation in Value or Ownership or Special Interest (Rule 64A(c)(8)–(9))

AVT argues that the leased equipment is depreciating in value and that, as Prime Alliance's agent, it has a special interest in the equipment. To show it is entitled to a prejudgment writ, it need only meet one of these requirements. *See* UTAH R. CIV. P. 64A(c). Cubitac responds that AVT meets neither. First, it argues that "all or virtually all of the depreciation of the Equipment occurred upon the installment and initial use of the Equipment," meaning that it is no longer declining in value. ECF No. 37 at 7. Cubitac also argues that as Prime Alliance's agent, AVT has no special interest in the property because agents have no property interests in the objects of their agency. It cites a Michigan bankruptcy case, in which the court ruled that because a bankrupt real estate broker held certain funds only as an agent, he never acquired a property interest in them and they were therefore not part of his bankruptcy estate. *In re Newpower*, 229 B.R. 691, 706 (W.D. Mich. 1999), *aff'd in part, rev'd in part*, 233 F.3d 922 (6th Cir. 2000).

While agents may lack ownership interests in the objects of their agency, Rule 64A(c)(9) requires only a special interest in the property, not necessarily an ownership interest. Here, the assignment agreement between Prime Alliance and AVT provides that "[u]pon the occurrence of an Event of Default under the Lease, [AVT] shall take such action as [Prime Alliance] shall reasonably direct to enforce all available rights and remedies under the Lease." ECF No. 38-5 ¶ 4. The court finds that AVT's enforcement rights under the agreement suffice to give AVT a special interest in the property.

7

The court cannot determine, based on the parties' conflicting affidavits alone, whether the equipment in question is depreciating in value. But because AVT has a special interest in the property, the court need not reach the issue of depreciation.

D.    Wrongful Detention (Rule 64B(b)(2))

AVT also argues that it meets the requirements for a writ of replevin because, as Prime Alliance's agent with enforcement obligations, it is entitled to possession of the equipment. Further, it argues that Cubitac wrongfully detains the equipment because it has failed to make the payments required under the lease agreement. Cubitac argues that "there is no wrongful detention and no right of action until a demand is made and met with refusal." ECF No. 37 at 6 (quoting *Pugh*, 450 P.2d at 466). The court has already found that AVT sent Cubitac a notice of default, and Cubitac does not contend either that it brought its lease payments current or that it returned the leased equipment. The court therefore finds that AVT has satisfied its burden of showing that the Rule 64B requirements for a prejudgment writ of replevin have been met.

E.    Personal Property

Cubitac argues that the equipment is real property, not personal property, because it is a fixture. It argues that it is "firmly bolted to the ground and walls of Cubitac's facility so as to constitute a part of the realty." ECF No. 37 at 8. Because a writ of replevin is only available to compel delivery of "personal property," UTAH R. CIV. P. 64B(a), Cubitac argues that such a writ is inappropriate here. In response, AVT points to the provisions of the lease agreement, which state that "[t]he Leased Property is personal property and shall not be or become, or be deemed to be or become, fixtures, notwithstanding any manner of annexation on or adaptability to the uses and purposes for any real property, or the intentions of the party making such annexation." ECF No. 34-1 ¶ 4(c). In addition, Metro Point LLC ("Metro Point"), the owner of the premises in which

8

Cubitac operates its facility, executed a Waiver in which it acknowledged that the leased property was not nor would become a fixture. *See* ECF No. 38-4 at 2. In light of these provisions of the lease agreement and Metro Point's acknowledgment, the court finds that the equipment is personal property and therefore may be subject to a writ of replevin.

      F.      Unconscionability

At oral argument, counsel for Cubitac raised two new theories to support its likelihood of success on AVT's underlying breach of contract claim—substantive and procedural unconscionability. These arguments were not included in the briefing or otherwise timely raised, and Cubitac offered no authority to support them. The court therefore declines to consider them.

**II.**     **Writ of Attachment**

"A writ of attachment is available to seize property in possession or under the control of the defendant." UTAH R. CIV. P. 64C(a). AVT argues that a writ of attachment is proper because, in addition to satisfying the Rule 64A requirements discussed above, 1) Cubitac is indebted to AVT because it has defaulted on the lease; 2) the action is upon a contract, namely, the lease agreement; and 3) AVT has not secured its claim through a lien upon any property in Utah. *See id* 64C(b)(1)–(3). Cubitac does not dispute that these requirements have been satisfied; rather, it argues that Rule 64C of the Utah Rules of Civil Procedure does not allow this court to attach property located outside the State of Utah. The Court court agrees with Cubitac.

In *Aequitas Enterprises, LLC v. Interstate Inv. Group, LLC*, the Utah Supreme Court held that Rule 64C does not authorize writs of attachment to issue on property located outside of Utah. 267 P.3d 923, 930 (Utah 2011). In that case, the plaintiff moved for a writ of attachment on 388 real properties located in various states other than Utah after defendant "failed to deliver title to the properties as promised." *Id.* at 924. The court noted that it had personal jurisdiction over the

parties (but not in rem jurisdiction, since the properties were outside of Utah), and that it therefore had "jurisdiction to adjudicate the parties' interests in real property, even if the property [was] not located in the state." *Id.* at 926.

Despite finding that it had jurisdiction to adjudicate the parties' interests in property outside of Utah, the court concluded that it lacked jurisdiction to issue a prejudgment writ of attachment. This was because Rule 64C is silent on the authority of Utah courts to issue writs of attachment to property located outside the state, and the court interpreted this silence as a purposeful omission meaning that "no such authority exists." *Id.* at 928. The court reasoned that a writ of attachment must be issued to a county sheriff, and Utah Courts have "no authority to direct sheriffs of other states' counties to seize property."[2] *Id.* It concluded that this approach was consistent with principles of due process and comity because the Constitution's Full Faith and Credit clause only "attaches to final judgments," not prejudgment writs. *Id.* (internal quotation marks omitted) (quoting *In re Adoption of Baby E.Z.*, 266 P.3d 702, 705 (Utah 2011) (citing U.S. CONST. art. IV, § 1)).[3]

---

[2] Cubitac did not argue that the Utah Supreme Court's holding in *Aequitas* applies to writs of replevin, and it is worth noting that the *Aequitas* decision likely would not apply to writs of replevin. A writ of replevin is an order to the defendant to return specified property, *see* UTAH R. CIV. P. 64B(a), whereas a writ of attachment authorizes seizure of property in the defendant's control. *See id.* 64C(a). Writs that authorize seizure of property are issued to county officers. *See id.* 64(d)(1). Due to this difference between writs of replevin and attachment, the reasoning of the *Aequitas* holding does not apply to writs of replevin.

[3] Rule 64(d)(1) of the Utah Rules of Civil Procedure provides that a writ directing seizure of real property shall be issued to the sheriff of the county in which it is located, whereas a writ directing seizure of personal property may be issued to any officer of any county. While the property at issue in *Aequitas* was real property, this court concludes that the Utah Supreme Court's reasoning also applies to writs directing seizure of personal property. From the Utah Supreme Court's explanation that the rules are intentionally silent on property located outside of Utah, it follows that "any officer

10

AVT points to the Uniform Enforcement of Foreign Judgments Act (the "Act"), which New Jersey has adopted, in support of its argument that this court may grant a writ of attachment on extraterritorial property. The Act provides that the Clerk of the New Jersey Superior Court "shall treat [a properly authenticated and filed] foreign judgment in the same manner as a judgment of the Superior Court of this State." N.J. STAT. ANN § 2A:49A-27 (West). However, the Act defines a "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this State." *Id.* § 2A:49A-26. Because the Utah Supreme Court has held that only final judgments are entitled to full faith and credit in other states, the Act does not apply to the prejudgment writ of attachment sought in this case. The court therefore declines to issue a writ of attachment.

### III. Security

Because AVT has satisfied the requirements to obtain a writ of replevin, it is necessary to address the issue of security. Utah Rule of Civil Procedure 64(b)(1) states:

> When security is required of a party, the party shall provide security in the sum and form the court deems adequate. For security by the plaintiff the amount should be sufficient to reimburse other parties for damages, costs and attorney fees incurred as a result of a writ wrongfully obtained. For security by the defendant, the amount should be equivalent to the amount of the claim or judgment or the value of the defendant's interest in the property. <u>In fixing the amount, the court may consider any relevant factor.</u> The court may relieve a party from the necessity of providing security if it appears that none of the parties will incur damages, costs or attorney fees as a result of a writ wrongfully obtained <u>or if there exists some other substantial reason for dispensing with security</u>. The amount of security does not establish or limit the amount of damages, costs or attorney fees recoverable if the writ is wrongfully obtained.

---

of any county" was meant to include only Utah counties. An officer of a county in Utah would have no authority, or practical ability, to seize personal property in New Jersey.

UTAH R. CIV. P. 64(b)(1) (emphasis added).

Upon the court's request, the parties filed additional briefs on the issue of security. Defendants argue that Plaintiff should be required to pay security in the amount of nearly $6 million. Defendants calculate this amount based on several factors, including the cost of deinstallation, shipping the equipment to AVT, renting a new facility to house machinery currently located on the equipment, and re-shipping and reinstalling the equipment if the writ is issued in error. Also included are Cubitac's anticipated lost profits during the deinstallation and reinstallation. Defendants further argue that Utah Rule of Civil Procedure 64(b)(1) does not allow the court to consider the likelihood of success on the merits in calculating a security amount. Rather, it argues that the court must require security "sufficient to reimburse other parties for damages, costs or attorney fees as a result of a writ wrongfully obtained . . ." *Id.*

Plaintiff, on the other hand, argues that it should not be required to pay any security, or in the alternative, that any security amount should be nominal. Plaintiff argues that Defendants have admitted the underlying facts that support a breach of contract claim. *See* ECF No. 57-1. Thus, there is no possibility that Defendant will suffer harm because there is no possibility that the writ will be issued wrongfully. In addition, AVT has submitted evidence of a lawsuit against Cubitac filed by Cubitac's landlord, Metro Point, in which Metro Point alleges that Cubitac is in default of both its lease with Metro Point and of a prior settlement agreement that resulted from Cubitac's failure to pay rent. *See* ECF No. 57-2. Plaintiff argues that because Cubitac will be evicted soon anyway, it would be unable to use the leased equipment even in the absence of a writ of replevin.

The court is persuaded not to require any security in this case. Contrary to Defendants' argument, the plain language of Rule 64(b)(1) allows courts broad discretion in determining whether to require security. It provides that a court may consider "any relevant factor" in fixing

the amount of the security. UTAH R. CIV. P. 64(b)(1). It further provides that a court may decline to require security at all if "there exists some other substantial reason for dispensing with security." *Id.* Here, at least two substantial reasons exist for dispensing with security. First, Defendants have shown no likelihood of success on the merits. In fact, by admitting the elements of breach of contract, they have acknowledged that Plaintiff is likely to succeed. Second, Defendants appear likely to be evicted soon, meaning they would either be unable to continue using the equipment in question or would have to pay to relocate it anyway.

Finally, Plaintiff argues that Cubitac must bear the cost of returning the leased equipment to AVT, per the terms of the Lease Agreement. Paragraph 10(d) of the Lease Agreement provides that "Lessee shall, at the expiration or termination of the Lease, <u>or upon notice from Lessor following an Event of Default</u>, at Lessee's sole expense, deliver the Leased Property to Lessor to a destination within the continental United States specified by Lessor." ECF No. 34-1 at 3 (emphasis added). Paragraph 20(c) states that "<u>upon written demand</u> [Lessor may] require Lessee to return Leased Property to Lessor in accordance with Section 10 above." *Id.* at 4 (emphasis added).

Read together, these provisions require Cubitac to return the equipment at its sole expense only if AVT provides notice in the form of a written demand. While AVT did provide Cubitac with a notice of default and a written demand, the demand was that Cubitac pay the specified default amount, not that it return the equipment at its sole expense. *See* ECF No. 38-8 at 7. The notice only informed Cubitac that if it failed to pay, AVT would pursue remedies under the Lease Agreement and that it "may take immediate measures to take possession of the equipment subject to the Lease." *Id.* This was not sufficient under the terms of the lease to give Cubitac notice that it would be required to return the equipment at its sole expense. This is supported by the fact that AVT is

13

entitled to multiple remedies under the lease, including peaceably entering and repossessing the equipment itself. *See* Lease Agreement ¶ 20 (ECF No. 34-1 at 5). For these reasons, the court will issue a writ ordering Defendants to return the leased equipment to AVT, but AVT shall bear the cost of repossessing the property.

## CONCLUSION AND ORDER

For the foregoing reasons, the court HEREBY ORDERS that Plaintiff's motion for a prejudgment writ of replevin is GRANTED and that Plaintiff's motion for a prejudgment writ of attachment is DENIED. Pursuant to this Order, the court will issue a writ in accordance with this Memorandum Decision.

DATED November 4, 2020.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge